# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TYLER J. QUINONES,<br><br>                Plaintiff,<br><br>v.<br><br>TRACY THOMPSON, JOANIE SULLIVAN, DR. DILIP TANNAN, KIMBERLY BERZINSKI, ANNE M. ZULEGER, THOMAS POLAKOWSKI, MELISSA RAMIREZ, and WILLIAM MCCREEDY,<br><br>                Defendants. | Case No. 20-CV-429-JPS<br><br>**ORDER** |

    Plaintiff Tyler J. Quinones ("Plaintiff") initially filed this case pro se on March 19, 2020. ECF No. 1. Counsel for Plaintiff filed a notice of appearance on February 25, 2021, and then filed an amended complaint on March 24, 2021. ECF No. 22.

    On August 25, 2021, this case was reassigned to this branch of the Court. On September 7, 2021, Defendants Kimberly Berzinski, William McCreedy, Melissa Ramirez, Joanie Sullivan, Dilip Tannan, Tracy Thompson, and Anne M. Zuleger (collectively the "State Defendants") filed a motion for judgment on the pleadings. ECF No. 41.[1]

    On September 17, 2021, the Court ordered that all discovery, including scheduled depositions, directed to any State Defendant shall be

---

[1] Defendant Thomas Polakowski is the only other named defendant remaining in the case. To date, he has filed no dispositive motions and will not be addressed in the remainder of this Order.

stayed until after the Court rendered a decision on the State Defendants' motion for judgment on the pleadings. ECF No. 48. On February 16, 2022, the Court denied the State Defendants' motion for judgment on the pleadings, without prejudice, and ordered the parties to meet and confer. ECF No. 51.

On February 25, 2022, the State Defendants filed a motion for clarification regarding the status of discovery in the case in light of the Court's ruling on the motion for judgment on the pleadings. ECF No. 53. On March 31, 2022, the State Defendants refiled their motion for judgment on the pleadings, indicating that the parties had complied with the meet and confer requirement. ECF No. 56. On July 1, 2022, the Court clarified that discovery was stayed until after the Court renders a decision on the State Defendants' renewed motion. ECF No. 60.

The State Defendants' renewed motion for judgment on the pleadings is now fully briefed and ready for disposition. For the reasons explained in detail below, the Court will grant the State Defendants' motion in part and will deny it in part.

1. **LEGAL STANDARD**

Once the pleadings are closed, a party may file a motion pursuant to Federal Rule of Civil Procedure 12(c) to challenge the sufficiency of the pleadings. These motions are evaluated under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citations and quotations omitted).

2. **RELEVANT FACTS**

Given the legal standard for judgment on the pleadings, the Court recites the facts as pleaded in the amended complaint.[2] Because the parties' dispute revolves around the level of factual detail contained in the amended complaint, the following facts are taken directly from the amended complaint with only minor structural and grammatical changes. *See* ECF No. 22 (quotations omitted).

2.1 **The Parties**

Defendant Tracy Thompson APNP ("Thompson"), is an adult citizen of the United States and a resident of the State of Wisconsin, who was Plaintiff's care provider at Kettle Moraine Correctional Institution ("KMCI"), who exhibited deliberate indifference by failing to assure that

---

[2]The Court omits any facts related to Defendant Kettle Moraine Institution as it was dismissed as a party on May 19, 2021. *See* ECF No. 27.

proper care and treatment was be provided to Plaintiff upon his arrival at KMCI, despite Plaintiff's serious and known medical needs.

Defendant Joanie Sullivan RN ("Sullivan") is an adult citizen of the United States and a resident of the State of Wisconsin, who was Plaintiff's care provider at KMCI, who exhibited deliberate indifference by failing to accommodate Plaintiff's medical condition.

Defendant Dr. Dilip Tannan, ("Dr. Tannan") is an adult citizen of the United States and a resident of the State of Wisconsin, who exhibited deliberate indifference by failing to assure that proper care and treatment was provided to Plaintiff upon his arrival at KMCI, despite Plaintiff's known medical needs.

Defendant Kimberly Berzinski, ("Berzinski") is an adult citizen of the United States and a resident of the State of Wisconsin, who was Plaintiff's care provider at KMCI, who exhibited deliberate indifference by failing to accommodate Plaintiff's medical condition.

Defendant Anne M. Zuleger ("Zuleger") is an adult citizen of the United States and a resident of the State of Wisconsin, who was Plaintiff's care provider at KMCI, who exhibited deliberate indifference by failing to accommodate Plaintiff's medical condition.

Defendant Thomas Polakowski RN ("Polakowski") is an adult citizen of the United States and a resident of the State of Wisconsin, who was Plaintiff's care provider at KMCI, who exhibited deliberate indifference by failing to accommodate Plaintiff's medical condition.

Defendant Melissa Ramirez PT ("Ramirez") is an adult citizen of the United States and a resident of the State of Wisconsin, who was Plaintiff's care provider at KMCI, who exhibited deliberate indifference by failing to accommodate Plaintiff's medical condition.

Defendant William McCreedy HSU manager/director ("McCreedy") is an adult citizen of the United States and a resident of the State of Wisconsin, who failed to assure the health and wellbeing of Plaintiff and failed to accommodate Plaintiff's medical condition.

### 2.2. Facts

This case involves the State of Wisconsin, the State of Wisconsin Department of Corrections ("WDOC"), the Wisconsin Department of Health Services ("WDHS"), and the named defendants' methods of infringing on and violating Plaintiff's Constitutional, civil, and statutory rights. Plaintiff was subjected to care, or lack thereof, which is incompatible with the evolving standards of decency and dignity that mark the progress of a maturing society and which involved the wanton and unnecessary infliction of pain, suffering, and embarrassment. Plaintiff, formerly housed at KMCI, received inadequate medical care while in custody despite the fact KMCI and the individually named defendants had knowledge and/or documentation of his existing injuries.

On February 5, 2019, Plaintiff was transferred from Dodge Correctional Institution to KMCI; his medical records followed his placement. One of such records included a note stating that a previous care provider recommended he have an MRI study of his lumbar spine and x-ray studies while at Dodge Correctional Institution revealed transitional lumbosacral anatomy. On April 24, 2019, Plaintiff submitted a Health Service Request pleading for medical assistance with his lower back pain and informed medical staff of his infused L3 L4 lumbar spine and scoliosis; he reminded them that an MRI still needed to be ordered. The request for health services was denied.

On April 26, 2019, Plaintiff submitted an interview/information request describing his pain; noting that the pain was so severe he was in tears, couldn't walk, sit, bend or even lay down and that he may have a herniated disc or sciatic nerve; noting that the Naproxen he was given wasn't helping; and requesting to be seen by a doctor. During Plaintiff's May 2, 2019 meeting with Thompson regarding a separate matter, Plaintiff tried to address his back pain and was told there was no time to assess his back at the time.

The following day, May 3, 2019, Plaintiff saw Zuleger for his lower back pain, hip pain, and shooting pain down his left leg. He asked for an MRI or an injection to help with his pain; he was instead encouraged to take medication and stretch. On May 4, 2019, Plaintiff submitted another Interview/Information Request stating "My lower back is in Extreme Pain. I think I need an MRI to see what's going on! I need to get in ASAP! The pain doesn't go away I tried to man it out over a month but I can't do it! I need help! Please set something up! It's a shooting, stabbing, throbbing Pain that doesn't go away! Thank you Maam! God Bless you!"

His request was returned indicating he would not be interviewed and that he needed to try the exercises given to him by the PT – the stretches and exercises he had been doing for roughly a month. On May 14, 2019, Plaintiff submitted an interview/information request asking when he was scheduled to see Thompson. He made clear that his back/hip/leg were in severe pain; that the stretching, muscle rub, and medication were doing nothing; and that he believed he needed an MRI to reveal the cause of his severe pain, discomfort, and physical limitations. Despite asking when he was scheduled to Thompson, his request for information came

Page 6 of 16
Case 2:20-cv-00429-JPS   Filed 09/29/22   Page 6 of 16   Document 61

back only stating – "This has been addressed. You are on the list to be seen by provider."

Following this refusal by Defendants to address his serious medical need, Plaintiff filed an Inmate Complaint on May 20, 2019, alleging that his "back is in Extreme Pain;" that it hurt to walk; that he was in his bed all day and only came out of his room to eat, and use the bathroom or phone; that HSU was not taking his medical complaints seriously; that he was crying due to the pain; and that he'd like an MRI to see what's wrong. The Complaint also made clear that ice, Naproxen, and stretching were doing nothing to help his severe and debilitating pain. The Complaint was dismissed, and Plaintiff was advised "all inmates are expected to take an active role in their own health care" and was encouraged to cooperate with HSU staff.

On June 9, 2019, Plaintiff again submitted an interview/information request to Thompson pleading for an MRI for his back. He reiterated that he had been following her recommended treatment plan of ice, muscle rub, and stretching every day and his pain was continuing to worsen every day. He stated "I can't take this pain anymore. Can you put me in PT until an MRI is done! I need help! Thank you maam! God Bless You!" Despite Plaintiff's serious medical need, Defendants did nothing to expedite his request.

On June 16, 2019, Plaintiff submitted an interview request attempting to contact HSU Manager McCreedy, hoping he would be able to assist. Plaintiff told him of his "constant" pain in his lower back and leg, rating "a pain level of 8/9 out of 10 all day long." Plaintiff expressed that it was taking two months to see the nurse practitioner and that he couldn't bend forward or lift his legs when sitting without extreme sharp, stabbing,

Page 7 of 16
Case 2:20-cv-00429-JPS   Filed 09/29/22   Page 7 of 16   Document 61

shooting pain down his lower back and left side of leg. Plaintiff told him of his pain when walking and his inability to get dressed. Plaintiff conveyed to him that he had made multiple attempts to get help; nothing was done. Even though Plaintiff specifically requested that his request be sent to "ONLY B. McCreedy HSU Manager," his concern was met with a reply by an RN telling him he was scheduled to see the advanced care provider "very soon."

Still in pain with no help in sight, on June 19, 2019, Plaintiff filed another complaint. He alleged that his lower back was in "SEVERE PAIN" shooting down into his left leg; he was in tears daily and unable to do daily activities. He wrote that despite his writings to staff of his worsened condition, they still did nothing and required him to wait two months for help. His complaint made clear that he was "in severe pain and suffering" and "can't wait anymore." He expressed his concern that he needed an MRI, as he felt his condition was "something very serious" and no one was taking him seriously. The complaint was rejected the next day as the issue was addressed in his previous complaint.

On July 1, 2019, Plaintiff appealed the original complaint decision. On this same date, he was also seen by Thompson who noted his sacroiliac joint dysfunction and ordered physical therapy and Tylenol. On July 5, 2019, Plaintiff's appeal was dismissed, advising that his complaint did not establish deliberate indifference to a serious medical need, but a mere difference of opinion between him and the prison medical staff regarding appropriate treatment – even though the current "treatment plan" offered no relief to his condition, an MRI had previously been recommended, and his pain continued to worsen.

By July 12, 2019, Plaintiff had followed up on Thompson's prescribed order for physical therapy and inquired on a bottom bunk restriction to accommodate his injuries no less than six times, when he injured his ankle while attempting to get down from his top bunk – requiring imaging of his foot. By July 31, 2019, he still received no indication on when he would begin physical therapy despite seven additional writings to medical staff inquiring when he could begin treatment and reiterations of his ongoing, worsening pain.

On August 2, 2019, Plaintiff filed an additional complaint alleging his lower back pain was so severe he could barely walk, stand, or sit. He described his pain and requested an x-ray. He did provide that he had an x-ray eight months previous to the filing, but the x-ray was for his scoliosis and the pain he has been trying to get help for started after a fall that took place in February or March of 2019. He continued to notify staff of his worsened condition but was only told to wait for physical therapy – the physical therapy he was prescribed a month prior and still hadn't been allowed to commence. On August 2, 2019, his complaint was rejected alleging that the issue raised in the complaint was addressed through Plaintiff's prior use of the complaint system. On August 2, 2019, Plaintiff's physical therapy sessions began. Following completion of his physical therapy sessions, which were excruciating and did nothing to alleviate his pain and suffering, Plaintiff was discharged and referred back to Thompson.

On September 20, 2019, an order for consult to offsite diagnostic radiology was placed. Between the date of the request and the date of his MRI, Plaintiff had followed up via both information and health service requests four times. Finally, after 37 Information Requests, 16 Health

Page 9 of 16
Case 2:20-cv-00429-JPS   Filed 09/29/22   Page 9 of 16   Document 61

Service Requests, 3 Inmate Complaints, and 1 Appeal, Plaintiff went in for his MRI on October 24, 2019 – roughly six months after his debilitating ailment first began. The MRI found "prominent left subarticular disc protrusion at L4-5" and the report stated injections may benefit Plaintiff. After multiple subsequent follow-ups, Plaintiff finally received his steroid injection on December 4, 2019. By this time, Plaintiff had been expressing his pain and pleading for help from medical staff for 234 days. He filed over 45 requests for help within this duration.

**3.     ANALYSIS**

The State Defendants move for judgment on the pleadings based on Plaintiff's failure to state any claims against them. ECF No. 56. Plaintiff's claims against the State Defendants are for Eighth Amendment violations for their deliberate indifference to Plaintiff's known serious medical need. ECF No. 22 at 8. Plaintiff opposes the motion on all bases and, alternatively, argues that he should be granted leave to file an amended complaint if the Court grants the motion for judgment on the pleadings. ECF No. 57.

**3.1     Deliberate Indifference Standard**

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment where he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is sufficiently serious if the plaintiff's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414

F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id.* The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Zhang*, 607 F. App'x 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).

### 3.2 Defendants Sullivan, Tannan, Berzinski, and Ramirez

The State Defendants first argue that Defendants Sullivan, Tannan, Berzinski, and Ramirez must be dismissed because Plaintiff has not put forth a single non-conclusory allegation implicating these individuals. Plaintiff argues that the amended complaint as to each defendant "carves out plausible claims of relief against each, which makes clear that each of the Defendants was Plaintiff's care provider while at KMCI, and that they exhibited deliberate indifference to the Plaintiff." ECF No. 57 at 7. Plaintiff points to his various requests for medical services and argues that the "more than reasonable inference from these facts is that they were all aware of Quinones's serious medical need, and needlessly delayed the appropriate, necessary, and previously recommended MRI." *Id.*

The Court will grant the motion as to Defendants Sullivan, Tannan, Berzinski, and Ramirez for the failure to state a claim against them. The

Page 11 of 16
Case 2:20-cv-00429-JPS    Filed 09/29/22    Page 11 of 16    Document 61

Court begins by noting that Plaintiff is represented by counsel, who does not receive the deference that a pro se party receives in the liberal screening of a complaint. Plaintiff's argument that the facts provide a "more than reasonable inference" of deliberate indifference is unpersuasive. As it relates to these defendants, the amended complaint sorely lacks any facts but for the conclusory allegations of deliberate indifference. As Defendants aptly argue, the courts have repeatedly held that such conclusory allegations are insufficient to state a claim. *See, e.g., McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."). Many of the specific factual allegations in the amended complaint beg the question as to *who* did the alleged act. Plaintiff identifies additional facts not in the amended complaint in support of his argument. For example, Plaintiff argues that Berzinski responded to a request on May 14, 2019 and cites directly to the amended complaint. ECF No. 57 at 3. The amended complaint, however, does not identify any actor for this allegation. Without any specific factual allegations against these defendants, the Court is obliged to find that Plaintiff has failed to state a claim against Defendants Sullivan, Tannan, Berzinski, and Ramirez.

### 3.3 Defendant McCreedy

The Court will also grant the State Defendants' motion as to Defendant McCreedy. Aside from the insufficient general conclusory allegations against McCreedy that are addressed above, Plaintiff makes only one specific allegation in regard to this defendant. Plaintiff alleges that on June 16, 2019, he "attempted" to contact McCreedy, the HSU manager, with an interview request. ECF No. 22 ¶ 27. Nowhere in the amended

complaint does it allege that McCreedy actually received this request or actually knew of Plaintiff's need for medical care. As such, the Court is obliged to find that Plaintiff has not stated a claim against Defendant McCreedy. *See Petties*, 836 F.3d at 728 (A plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm.") (emphasis in original).

### 3.4 Defendant Zuleger

In contrast, the Court will deny the State Defendants' motion for judgment on the pleadings in regard to Defendant Zuleger. Plaintiff alleges that on May 3, 2019, Plaintiff saw Zuleger for his lower back pain, hip pain, and shooting pain down his leg. ECF No. 56 ¶ 20. Plaintiff asked for an injection or MRI to help with his pain, but Zuleger instead only encouraged him to take medication and stretch. *Id.* Standing alone, the Court would tend to agree with the State Defendants that this allegation is insufficient to state a claim for deliberate indifference. However, Plaintiff also alleges that his medical file included a note stating that a previous care provider recommended he have an MRI study of his lumbar spine and x-ray from as far back as prior to February 5, 2019. *Id.* ¶ 16. A reasonable inference from Plaintiff's allegations is that Zuleger had access to Plaintiff's medical files when making the treatment decision for him to only receive medication and stretching.

The Court acknowledges that Plaintiff may have a tall hill to climb at the summary judgment stage because Defendants rightly point out that a difference of opinion among doctors is not enough to establish deliberate indifference. *See, e.g., Petties*, 836 F.3d at 729. However, an inmate need not show that he was "literally ignored" to prevail on a deliberate indifference claim. *Conley v. Birch*, 796 F.3d 742, 748 (7th Cir. 2015) (citation omitted).

"[I]f the defendant's chosen 'course of treatment' departs radically from 'accepted professional practice,' a jury may infer from the treatment decision itself that no exercise of professional judgment actually occurred." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). Based on Plaintiff's medical records and timeline of his requests for care, he may be able to show that Zuleger's refusal to provide Plaintiff with more robust treatment constituted deliberate indifference. As such, the Court finds that Plaintiff sufficiently states a claim at the pleadings stage against Zuleger and will accordingly deny the State Defendants' motion as to Defendant Zuleger.

### 3.5 Defendant Thompson

The Court will also deny the State Defendants' motion for judgment on the pleadings as to Defendant Thompson for the same reason as for Defendant Zuleger. Defendants acknowledge that there are specific factual allegations against Thompson. ECF No. 56 at 6. Defendants argue, however, that none of these allegations, whether standing alone or taken together, states a claim for deliberate indifference. *Id.* The Court disagrees. Plaintiff alleges that on May 2, 2019, Plaintiff saw Thompson regarding a separate matter and he tried to address his back pain; Thompson told Plaintiff there was no time to address his back at that time. ECF No. 22 ¶ 19. On June 9, 2019, Plaintiff submitted an interview/information to Thompson pleading for an MRI for his back. He stated he had been following her recommended treatment plan of ice, muscle rub, and stretching every day but that his pain was continuing to worsen every day. Thompson did nothing to expedite his request *Id.* ¶ 26. Again, a reasonable inference is that Thompson had access to Plaintiff's medical file when making these treatment decisions. Plaintiff may be able to show that Thompson's refusal to provide Plaintiff with more robust treatment constituted deliberate indifference based on his medical

file and the continuing requests for care. At the pleadings stage, the Court finds that Plaintiff sufficiently states a claim against Thompson and will accordingly deny the State Defendants' motion as to Defendant Thompson.

### 4. AMENDMENT

Finally, in the interest of justice, the Court will grant Plaintiff's request for leave to amend. Plaintiff may file a second amended complaint on or before **October 13, 2022**. The Court notes, however, that it grants leave to amend somewhat begrudgingly in this instance. Plaintiff's amended complaint is sloppily pled; various deficiencies identified in the amended complaint could have and should have been resolved at an earlier stage without the Court's involvement. The Court strongly urges the parties to work together to resolve future issues in order to preserve precious judicial resources.

### 5. CONCLUSION

For the reasons explained above, the State Defendants' renewed motion for judgment on the pleadings will be granted in part and denied in part as described in detail above. Plaintiff may file a second amended complaint on or before **October 13, 2022**. Given the unnecessarily long timeline of this case, the Court will lift the stay on discovery and will order the parties to immediately resume the discovery process in an effort to bring this case to resolution in a timely fashion. The Court will issue a scheduling order detailing the relevant deadlines forthwith.

Accordingly,

**IT IS ORDERED** that the State Defendants' renewed motion for judgment on the pleadings, ECF No. 56, be and the same is hereby **GRANTED in part and DENIED in part**, as stated in the text of this Order;

**IT IS FURTHER ORDERED** that Plaintiff may file a second amended complaint on or before **October 13, 2022**; and

**IT IS FURTHER ORDERED** that the discovery stay be and the same is hereby **LIFTED** and that the parties resume discovery in order to expeditiously resolve this case.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge